—FOR PUBLICATION—

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THOMAS SKÖLD,** | |
| **Plaintiff,** | |
| | |
| **v.** | **CIVIL ACTION** |
| | |
| **GALDERMA LABORATORIES, L.P.;** | **NO.  14-5280** |
| **GALDERMA LABORATORIES, INC.;** | |
| **and GALDERMA S.A.,** | |
| **Defendants.** | |

**OPINION**

## I.    INTRODUCTION

Before the Court are Defendants Galderma Laboratories, L.P. and Galderma Laboratories, Inc.'s Motion to Dismiss and Motion to Stay Pending the Outcome of the Administrative Proceeding, Plaintiff Thomas Sköld's Response in Opposition thereto, and Galderma L.P. and Galderma Inc.'s Reply, as well as Defendant Galderma S.A.'s Motion to Dismiss and Motion to Stay Pending the Outcome of the Administrative Proceeding, the Plaintiff's Response in Opposition thereto, and Galderma S.A.'s Reply.[1]  The Court held oral argument on all pending motions on March 19, 2015.

For the reasons that follow, the motion to stay shall be denied as moot, the motions to dismiss for failure to state a claim shall be granted in part, and the motion to dismiss for lack of personal jurisdiction shall be denied.

---

[1]   Galderma S.A. was served after Galderma Laboratories, L.P. and Galderma Laboratories, Inc. had filed their motion to dismiss.  Galderma S.A. then filed its own motion to dismiss, incorporating the arguments contained in L.P. and Inc.'s motion to dismiss Sköld's state-law claims and also arguing separately that this Court cannot exercise either general or specific personal jurisdiction over it.  *See* S.A. Mot. to Dismiss at 11.  Hereinafter, any reference in this Opinion to an argument made by "the Defendants" collectively will be used in the context of an argument asserted by Galderma Laboratories, L.P. and Galderma Laboratories, Inc. in their Motion to Dismiss that was later incorporated by Galderma S.A. in its Motion to Dismiss.

## II.     FACTUAL HISTORY AND PROCEDURAL BACKGROUND

According to the facts alleged in the Complaint, Plaintiff Thomas Sköld is a citizen of

Sweden.  Compl. ¶ 4.  Defendant Galderma S.A. ("S.A.") is a Swiss corporation with its

principal place of business in Switzerland, while Defendant Galderma Laboratories, Inc. ("Inc.")

is a Delaware corporation with its principal place of business in Texas and Defendant Galderma

Laboratories, L.P. ("L.P.") is a Texas limited partnership with its principal place of business in

Texas.  *Id.* ¶¶ 5-7.  All three Defendant entities are "involved in the research, development,

marketing, and sale of pharmaceutical and therapeutic skin care products."  *Id.*  Sköld alleges

that S.A. is the ultimate owner of both Inc. and L.P.  *Id.* ¶ 8.

In Summer 2001, Sköld began developing the technology that would eventually become

known as "Restoraderm" and set out to find entities interested in licensing the technology and

developing the resulting product to be marketed and distributed for mass consumption.  *Id.* ¶ 11.

In September 2001, Sköld met with Collagenex Pharmaceuticals, Inc. ("Collagenex") of

Newtown, Pennsylvania, and presented it formulations of his Restoraderm technology, using the

phrase "Restoraderm technology" both in his oral presentation and written materials.  *Id.* ¶ 12.

Sköld used the term "Restoraderm" in similar meetings he had with other pharmaceutical

companies throughout the remainder of 2001.  *Id.* ¶¶ 14-18.  He first manufactured a Restoraderm

product "in its current form in about October 2001," and delivered samples of a material with the

"Restoraderm" label to Collagenex in November and December 2001 and January 2002.  *Id.*

¶¶ 19-21.  Sköld and Collagenex executed a Letter of Intent in December 2001 and signed a Co-

operation, Development, and Licensing Agreement on February 11, 2002 (the "2002 Agreement").

*Id.* ¶¶ 22-23.  Under the 2002 Agreement, Sköld continued developing the Restoraderm

technology, while Collagenex developed and maintained the Restoraderm intellectual property

rights, including registering and protecting the "Restoraderm" trademark, a process Collagenex began in 2002. *Id.* ¶¶ 24-26.

In August 2004, Sköld and Collagenex signed a Consulting Agreement under which Sköld would provide "technical consulting and development services with respect to Restoraderm Technology in such manner as shall be requested by the Company from time to time," defining "Restoraderm Technology" as the "topical drug delivery technology developed by Sköld." *Id.* ¶ 28. On August 19, 2004, Sköld and Collagenex restructured the 2002 Agreement into an Asset Purchase and Product Development Agreement (the "2004 Agreement"), which "formalized Sköld's control of the Restoraderm development." *Id.* ¶¶ 27, 29. In the course of negotiating this agreement, Collagenex "confirmed" that the Restoraderm trademark was included in the assets contemplated in the agreement. *Id.* ¶ 30.

Inc. acquired Collagenex in March 2008 and terminated the 2004 Agreement with Sköld on November 27, 2009. *Id.* ¶¶ 33-34. Section 8.5(b) of the 2004 Agreement provides that should Collagenex terminate the Agreement, the assets, including the Restoraderm intellectual property, and additional related records shall be transferred to Sköld. *Id.* ¶ 35 & Ex. A at 19. Sköld alleges that the "parties' contractual intent was that the Restoraderm trademark would be returned to Sköld if the 2004 Agreement were cancelled by Collagenex (or its successors-in-interest)," but that the Defendants have yet to return the Restoraderm trademark to Sköld in accordance with this provision. *Id.* ¶¶ 36-37.

After terminating the 2004 Agreement, Sköld alleges the Defendants "gave mixed messages" regarding their intentions for future use of the Restoraderm trademark and Restoraderm technology. *Id.* ¶ 38. On September 14, 2010, L.P. issued a Press Release announcing the launch of "Cetaphil® Restoraderm® products" in the United States, which,

according to the Complaint, "made it clear that the Defendants intended to use the mark 'Restoraderm' in connection with a product to be sold by them in the United States." *Id.* ¶¶ 39-40.  Sköld alleges that this press release "was the first time that the Defendants had used the term 'Restoraderm' in connection with a U.S. product that did not involve Sköld's Restoraderm technology." *Id.* ¶ 43.

Sköld filed an action in this Court on September 15, 2014, alleging three counts under the Lanham Act—trademark infringement, false advertising, and unfair competition—and three counts under Pennsylvania state law—unfair competition, breach of contract, and unjust enrichment.  *Id.* ¶¶ 48-80.  Sköld previously initiated a proceeding before the U.S. Patent and Trademark Office seeking to cancel the Defendants' registration of the "Restoraderm" trademark, *id.* ¶ 37, but that proceeding has been stayed by the Trademark Trial and Appeal Board ("TTAB") pending the outcome of this litigation.  *See infra* Section IV.A.

L.P. and Inc. filed a motion to dismiss on December 1, 2014.  They contend as follows. First, the breach of contract and unjust enrichment claims are barred by Pennsylvania's four-year statute of limitations because the claims began to accrue prior to September 15, 2010.  Second, the breach of contract claim should also be dismissed for failing to comply with the agreement's dispute resolution and mediation clause.  Third, the unjust enrichment claim should be dismissed because the complained-of conduct is governed by contract, which precludes Sköld from availing himself of quasi-contract theories of recovery.  And finally, the unfair competition claim is precluded by the gist of the action doctrine because he impermissibly attempts to recast a breach of contract claim as a tort claim.  *See* L.P./Inc. Mot. to Dismiss at 8-9.

On December 22, 2014, Sköld filed his response in opposition.  He argues that he filed the Complaint within the four-year limitations period because he was unaware the contract was

breached until September 14, 2010, when L.P. issued the press release announcing the Restoraderm product.  In the alternative, Sköld contends he is entitled to equitable tolling of the statute of limitations.  Furthermore, he argues that the unjust enrichment claim is not precluded against all parties by the contract and the gist of the action doctrine does not bar his unfair competition claim.  *See* Pl.'s L.P./Inc. Opp'n at 10-13.  In reply, L.P. and Inc. argue that Sköld knew about the Defendants' use of Restoraderm no later than August 16, 2010, when he initiated the TTAB proceeding, attaching a May 26, 2010 press release "demonstrating Defendant's widespread public use of the RESTORADERM mark for its products."  L.P./Inc. Reply at 2.  Based on that press release, L.P. and Inc. contend that Sköld "transparent[ly] attempt[s] to avoid dismissal on statute of limitations grounds."  *Id.*  They also argue that Sköld is not entitled to equitable tolling and reaffirm their arguments on the other grounds.  *See id.* at 4-8.

S.A. filed its own motion to dismiss on January 15, 2015.  *See* S.A. Mot. to Dismiss; *see also supra* note 1.  In opposition to S.A.'s jurisdictional argument, Sköld argued that jurisdiction is proper under the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2), because S.A. has sufficient contacts with the United States such that the exercise of jurisdiction comports with due process.  *See* Pl.'s S.A. Opp'n at 9-10.  Furthermore, Sköld alleges that the forum selection clause in the 2004 Agreement operates to subject S.A. to jurisdiction in this Court.  *See id.*  In Reply, S.A. argues that: (1) Rule 4(k)(2) does not apply; (2) the forum selection clause does not apply to S.A. as a non-signatory third party to the 2004 Agreement; and (3) the forum selection clause does not apply to the Sköld's claims against it.  *See* S.A. Reply at 2-9.

## III.    DISCUSSION

### A.    *Motions to Stay*

The Court first addresses the Defendants' motions to stay this action pending a decision of the TTAB in the cancellation proceeding.  In his Opposition to S.A.'s motion to dismiss and motion to stay, Sköld brought to the Court's attention that the TTAB proceeding has been stayed pending the outcome of this litigation.  Pl.'s S.A. Opp'n at 11 (citing Michie Decl. ¶ 13 & Ex. J). In its Reply, S.A., on behalf of all three Defendants, recognized this action by the TTAB and withdrew the motions to stay.  S.A. Reply at 1 n.1.  Accordingly, the Defendants' motions to stay are moot.

### B.    *Alternative Dispute Resolution Clause*

The Defendants contend that the Complaint should be dismissed in its entirety for failure to comply with the 2004 Agreement's dispute resolution and mediation clause.  L.P./Inc. Mot. to Dismiss at 12-13.  The clause provides that "[a]ny dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof *shall* first be referred by the parties to their senior-level executives for attempted resolution through good-faith negotiations."  Compl. Ex. A § 9.1 (emphasis added).  Should negotiations fail, thirty days after making a written request to initiate those negotiations, "either Party *may*, by written notice to the other, require that the Dispute be referred to non-binding mediation administered by the American Arbitration Association."  *Id.* (emphasis added).  The Defendants assert that Sköld did not refer a dispute to a senior-level executive for negotiations and failed to make a written request that the dispute be referred to nonbinding mediation.  L.P./Inc. Mot. to Dismiss at 12-13. Sköld responds that the language of the mediation clause is permissive ("either Party *may . . .* require") and also argues that, in any event, Inc. has waived its right to invoke the clause because

it participated in litigation over the dispute in the cancellation action before the TTAB.  *See* Pl.'s L.P./Inc. Opp'n at 14-15.

The dispute resolution clause in the 2004 Agreement contains two clauses, one of which is mandatory (the parties *shall* refer the matter to senior executives to attempt to negotiate a resolution) and the other which is permissive (the parties *may* refer the matter to nonbinding mediation).  Given the voluntary nature of the latter, this Court agrees with Sköld that he was not required to refer this dispute to mediation before bringing suit here against Inc.

L.P. and S.A., who are not parties to the 2004 Agreement, also contend that the dispute resolution clause requires their dismissal from this action.  In essence, they urge this Court to accept the contention that a nonparty to an agreement should be permitted to force a signatory party to engage in negotiations pursuant to a permissive mediation clause in that agreement as a condition precedent to filing suit but cite no relevant case or statute in support of this contention.  *See United States v. Benish*, 5 F.3d 20, 26 (3d Cir. 1993) (rejecting a party's claim where the party "provid[ed] no legal support for his argument or any persuasive reason" for the court to find in his favor).[2]  The Court sees no persuasive reason to dismiss Sköld's entire Complaint based on this unsupported argument.  Accordingly, the motion to dismiss the Complaint against L.P. and S.A. on this ground shall be denied.

Regarding Inc.:  although Sköld did fail to bring in a senior-level executive to try to resolve the dispute—as he was required to do under the dispute resolution provision—Inc.'s participation in the TTAB proceedings waived any rights it may have had to seek to have the

---

[2]   Both cases the Defendants cite ostensibly in support of their argument are inapposite, as both involved parties to an agreement forcing other parties to that agreement to engage in the binding arbitration to which they assented at the time of contracting.  *See Seus v. John Nuveen & Co.*, 146 F.3d 175, 177 (3d Cir. 1998) ("I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . ."), *overruled on other grounds by Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000); *Halide Grp., Inc. v. Hyosung Corp.*, No. 10-2392, 2010 WL 4456928, at *2 (E.D. Pa. Nov. 8, 2010) (stating that the relevant agreement provided any dispute or claim that could not be settled by mandatory "best efforts" negotiation "*shall* be finally resolved by arbitration in the defendant's country" (emphasis added)).

parties' executives negotiate an end to the dispute.  *See, e.g.*, *LBL Skysystems (USA), Inc. v. APG-Am., Inc.*, No. 02-5379, 2005 WL 2140240, at *30 (E.D. Pa. Aug. 31, 2005) (holding that a "party that engages in discovery and files pretrial motions waives a contract's alternative dispute resolution provision"); *Smith v. IMG Worldwide, Inc.*, 360 F. Supp. 2d 681, 687 (E.D. Pa. 2005) (finding that a party's engaging in motion practice and providing "substantial discovery" constituted waiver of contractual alternative dispute resolution provision).

Viewing the four years' worth of docket entries in the TTAB action, the Court considers that Inc. did not file a motion to stay the TTAB proceedings pending executive-level negotiations and instead filed, *inter alia*, motions to dismiss, a protective order, multiple summary judgment motions (one of which was partially granted in its favor), and a final brief in preparation for trial. *See, e.g.*, *Sköld v. Galderma Labs., Inc.*, Cancellation No. 92052897, 2012 WL 5902083 (T.T.A.B. Nov. 8, 2012) (granting Inc.'s motion for partial summary judgment on Sköld's abandonment claim).  *See also generally* Registrant's Trial Brief, *Sköld v. Galderma Labs., Inc.*, Cancellation No. 92052897 (T.T.A.B. Aug. 13, 2014), Docket No. 81.  This four-year history of litigation in the cancellation action—from filing nearly through trial—is, on its face, inconsistent with the notion that Inc. was willing to engage in the good-faith executive-level negotiations required by the dispute resolution provision.

Moreover, the Court can look to the TTAB's grant of partial summary judgment in favor of Inc. and dismissing Sköld's abandonment claim as a concrete example of an instance where Inc.'s conduct inconsistent with the dispute resolution clause caused prejudice to Sköld, not to mention the expenditure of time, cost, and resources attendant to maintaining a multi-year trademark cancellation action.  The Defendants have undisputedly accepted the judicial process and have demonstrated that fact by: (1) Inc.'s failure to raise the issue of good-faith negotiations

promptly before the TTAB; (2) Inc.'s engaging in discovery in the TTAB action; (3) Inc.'s filing

of several pretrial motions in the TTAB action, none of which raise the issue of negotiation; and

(4) the Defendants' decision to wait until the case was ready to proceed to trial before the TTAB

and until a Complaint was filed in this Court before asserting Sköld's failure to negotiate as

grounds for a motion to dismiss.  *See St. Clair Area Sch. Dist. Bd. of Educ. v. E.I. Assocs.*, 733

A.2d 677, 682 n.6 (Pa. Commw. Ct. 1999) ("The key to determining whether [an alternative

dispute resolution procedure] has been waived is whether the party, by virtue of its conduct, has

accepted the judicial process.").  Inc. cannot now attempt to stand on the alternative dispute

resolution clause as a reason for dismissal.  Its right to invoke the clause has been waived.

Accordingly, the motions to dismiss on this ground shall be denied.[3]

### C.    *Breach of Contract*

#### 1.    **Timeliness of the Claim**

The parties dispute whether Sköld's breach of contract claim in Count Five of the

Complaint is barred by the statute of limitations.  Absent a borrowing statute, a federal court

---

[3]   As an alternative to dismissal, the Defendants request that the Court stay this action and order that Sköld take the steps outlined in the dispute resolution clause before proceeding here.  L.P./Inc. Mot. to Dismiss at 13 n.5.  In support of this argument, they cite *Mendez v. Puerto Rican International Cos.*, 553 F.3d 709 (3d Cir. 2009), in which the Third Circuit affirmed the district court's grant of a stay pending arbitration.  While it is true that Section 3 of the Arbitration Act permits a district court to stay "*any* suit . . . brought in any of the courts of the United States upon *any* issue referable to arbitration," 9 U.S.C. § 3 (2012) (emphasis added), and while it is true that this section is drafted broadly enough "to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under" an agreement governed by the Arbitration Act, *Contracting Nw., Inc. v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983), the Defendants have not provided any support for the argument that these principles apply to nonparties seeking stays pending the outcome of good-faith negotiations.

"The power to stay proceedings," and, as a corollary, the power to decline to stay proceedings, "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248 (1936).  The 2004 Agreement was allegedly breached in 2010, and Sköld has already been involved in four years of litigation with one Defendant in the TTAB action since then (which, as stated above, has already been stayed).  Moreover, all parties in the present action have been involved in this litigation for over half a year.  If the parties have been unable to reach some common ground through all that time, the Court finds it unlikely that imposing a stay to force good-faith negotiations and perhaps a separate mediation will be anything but a waste of the parties' (and the Court's) time, energy, and resources.  For these reasons, the Court will not stay this action to impose the 2004 Agreement's alternative dispute resolution clause.

exercising supplemental jurisdiction applies the forum state's statute of limitations. *Layser v. Morrison*, 935 F. Supp. 562, 570 (E.D. Pa. 1995). Pennsylvania's statute of limitations to file contract actions is four years. 42 Pa. Cons. Stat. § 5525. In the Complaint and his Opposition, Sköld asserts that the breach of contract claim accrued on Sunday, September 14, 2010, when L.P. issued the press release announcing the launch of "Cetaphil® Restoraderm® Products" in the United States. *See* Compl. ¶ 39; Pl.'s L.P./Inc. Opp'n at 7. Because the Complaint was filed four years later, on Monday, September 15, 2014 (September 14, 2014, was a Sunday), he argues the claim is timely. *See* 1 Pa. Cons. Stat. § 1908 ("Whenever the last day of such period shall fall on a Saturday or Sunday . . . such day shall be omitted from the computation.").

The Defendants argue that the claim for breach of contract began to accrue as early as November 27, 2009, when Inc. terminated the 2004 Agreement with Sköld and did not immediately revert the Restoraderm intellectual property to Sköld, as he alleges they were required to do. L.P./Inc. Mot. to Dismiss at 6. They further argue that Sköld's commencing of the TTAB proceeding on August 16, 2010, necessarily evinces his knowledge on that date that the Defendants had breached the contract by not reverting the Restoraderm trademark to Sköld as provided for in the contract. *Id.* They point to an attachment to Sköld's petition in the TTAB proceeding: a May 26, 2010, article titled "Cetaphil RestoraDERM for extra dry skin and Eczema," which stated that Cetaphil, an allegedly well-known Inc. brand, was planning to introduce a new line of skin care products called "RestoraDERM" in August 2010. L.P./Inc. Reply at 2 (quoting Rochford Decl. Ex. B at Ex. 8). Given Sköld's concession that the Defendants' September 14, 2010, press release put him on notice of the breach of contract claim, they contend that the similarly worded May 26, 2010, article should have also put him on notice. *Id.* at 2-3. If they are correct, the cause of action for breach of contract accrued no later than

August 16, 2010, when Sköld filed his petition in the TTAB proceeding attaching the article, and this lawsuit is untimely because it was filed over four years and three months later.  *Id.*

Whether they are correct is determined by reference to the so-called "Third Circuit Rule," which "permit[s] a limitations defense to be raised by a motion under Rule 12(b)(6) 'only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)).  Under this rule "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  *Id.* (quoting *Robinson*, 313 F.3d at 135) (internal quotation marks omitted).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Id.* (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)) (internal quotation marks omitted).  An exception to this rule, however, is that "a 'document *integral to or explicitly relied upon* in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added) (alteration in original) (citation and internal quotation marks omitted).  In the context of a motion decided pursuant to the Third Circuit Rule, "what is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."  *Schmidt*, 770 F.3d at 249.

Here, the bar is not apparent on the face of the Complaint.  Accepting all facts alleged in the Complaint as true, *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009),

Sköld was not aware of the Defendants' breach until September 14, 2010, when L.P. issued the press release introducing the products bearing the Restoraderm trademark.[4]  Sköld alleges in the Complaint that the press release "was the first time that the Defendants had used the term 'Restoraderm' in connection with a U.S. product that did not involve Sköld's Restoraderm technology."  Compl. ¶ 42.  Although this press release was not attached to the Complaint or to any of the parties' briefs, it is clear that the breach of contract claim is "based" on this extrinsic document, and the Court may thus rely on it.  *Schmidt*, 770 F.3d at 249.

The Defendants urge this Court to consider a document attached to Sköld's petition initiating the proceeding before the TTAB:  a May 26, 2010, document L.P. and Inc. describe as a "release," comparing it directly to the September 14, 2010, press release Sköld alleges forms the basis for the breach of contract action.  *See* L.P./Inc. Reply at 3.  They argue that this document, titled "Cetaphil RestoraDERM for extra dry skin and Eczema," contains all the information Sköld needed to ascertain his injury and thus the claim for breach of contract is untimely.  *Id.*  "While this may be true, these materials may not be considered at the motion to dismiss stage.  They are not integral to the complaint—the complaint was not 'based' on" this third-party document, but rather on the September 14, 2010, press release published by the Defendants.  *Schmidt*, 770 F.3d at 249-50.  The Court will not consider this document.[5]

---

[4]   The Court finds no merit in the Defendants' argument that the breach accrued on the day Inc. terminated the 2004 Agreement.  Section 8.2 of the Agreement expressly provided that Collagenex could terminate at any time after March 31, 2007.  *See* Compl. Ex. A.  Construing all reasonable inferences in the Plaintiff's favor, the Agreement was unclear by what date Inc. was required to transfer assets to Sköld after electing to terminate the Agreement.  Any arguments to the contrary involve fact-specific issues of contract interpretation not appropriate for determination at this stage of the proceedings.

[5]   The Defendants also urged the Court at oral argument to consider the fact of the Plaintiff's filing of the TTAB petition as evidence that he was aware the contract was breached prior to September 14, 2010.  While the Complaint mentions that there was a TTAB proceeding pending at the time of filing, *see* Compl. ¶ 37, the date of filing is not included and thus the Court need not consider it in ruling on whether to grant a motion to dismiss the breach of contract claim on timeliness grounds, which, again, is only permissible "[i]f the bar is . . . apparent on the face of the complaint."  *Schmidt*, 770 F.3d at 249.

Thus, taking the well-pleaded allegations in the Complaint as true, and drawing all reasonable inferences in Sköld's favor therefrom, the Court will not dismiss the contract claims on statute of limitations grounds, at least at this stage of the proceedings.  Accordingly, the motions to dismiss the breach of contract claim in Count Five on this ground shall be denied.[6]

### 2.        Whether S.A. is a Proper Defendant

S.A. contends that the breach of contract claim should be dismissed against it because Sköld does not allege that it was a party to the 2004 Agreement.  S.A. Mot. to Dismiss at 11; S.A. Reply at 2-3.[7]  Sköld does not provide any counterargument in his opposition brief.  "Where an issue of fact or law is raised in an opening brief but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue."  *Markert v. PNC Fin. Servs. Grp., Inc.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011); *see also Young v. St. Luke's Hosp.*, No. 09-3460, 2010 WL 1348468, at *6 (E.D. Pa. Mar. 30, 2010) ("Parties who fail to adequately brief their opposition to motions do so at the risk of having those motions granted as uncontested.").

Even so, the only allegations in the Complaint concerning S.A.'s relationship with Inc., the successor-in-interest to the signatory party are so sparse as to warrant a dismissal of the contract claim against S.A.  Paragraph 8 provides, "Upon information and belief, Galderma S.A. is the ultimate owner of Galderma Laboratories, Inc. and Galderma Laboratories, L.P."  Compl. ¶ 8.  And paragraph 9 states simply, that "[e]ach defendant acted in concert and active participation with each other in committing the wrongful acts alleged herein."  *Id.* ¶ 9.

---

[6]   As the Court has denied the Defendants' motion to dismiss on timeliness on the face of the Complaint, it declines to address Sköld's equitable tolling argument.

[7]   S.A. argues (but only in passing) in its Reply that L.P. likewise is not a party to the contract and should likewise not be called to defend against the breach claims.  S.A. Reply at 2.  This is not an argument that was raised by L.P. in its briefing, however, and the Court thus declines to address such an argument now.  *See Carpenter v. Vaughn*, 888 F. Supp. 635, 648 (M.D. Pa. 1994) ("A litigant who fails to press a point by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority . . . forfeits the point.").

Notwithstanding the fact that paragraph 9 is conclusory, and, without more, is not entitled to any credence under *Twombly* and *Iqbal*, the single allegation in paragraph 8 that S.A. is the ultimate owner of Inc. is insufficient to hold S.A. liable for a breach of contract.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (stating that a court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth" (citation and internal quotation marks omitted)).  There are simply insufficient "facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Because Sköld has not addressed S.A.'s argument that it is not a party to the contract and because the Complaint does not contain sufficient allegations to survive *Twombly* and *Iqbal* scrutiny, the breach of contract claim in Count Five shall be dismissed as to S.A.

      **D.**    ***Unjust Enrichment***

      The Defendants argue that Sköld fails to state a claim for unjust enrichment.  They contend the claim should be dismissed because it is precluded by the 2004 Agreement.  This Court agrees that the existence of the 2004 Agreement precludes Sköld from proceeding on an unjust enrichment claim against Inc., the successor-in-interest to the original Collagenex contract.  *See Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (stating that a claim for unjust enrichment is unavailable "when the relationship between the parties is founded on a written agreement or express contract") (citation and internal quotation marks omitted)).  Sköld has not questioned the validity of the 2004 Agreement, and Inc. does not dispute its validity.  Only if there were a "question as to the validity of the contract in question" could Sköld proceed on both theories in the alternative against Inc.  *Premier Payments Online, Inc. v.*

*Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) (citation and internal

quotation marks omitted).  There being no such question, the motion to dismiss the unjust

enrichment claim against Inc. shall be granted.

The same is not so for S.A. or L.P.  S.A. argued throughout its briefing that it is not a

party to the contract and that this Court should dismiss the breach of contract claims against it

based on that fact, and the Court agreed.  *See supra* subsection IV.C.2.  However, because the

relationship between Sköld and S.A. is not governed by an express written agreement, S.A.

cannot rely on the existence of the 2004 Agreement to shield it from Sköld's unjust enrichment

claim.  "'Unjust enrichment' is essentially an equitable doctrine," under which "the law implies a

contract which requires the defendant to pay to the plaintiff the value of the benefit conferred."

*Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) (quoting *Styer v. Hugo*, 619 A.2d

347 (Pa. Super. Ct. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994); *Schenck v. K.E. David, Ltd.*, 666 A.2d

327 (Pa. Super. Ct. 1994)).  To state a claim for unjust enrichment, a plaintiff must allege:

> [1] benefits conferred on one party by another; [2] appreciation of such benefits
> by the recipient; and [3] acceptance and retention of such benefits under such
> circumstances that it would be inequitable [or unjust] for defendant to retain the
> benefit without payment of value.

*Premier Payments*, 848 F. Supp. 2d at 527 (quoting *Allegheny Gen. Hosp. v. Philip Morris, Inc.*,

228 F.3d 429, 447 (3d Cir. 2000)); *accord Torchia ex rel. Torchia v. Torchia*, 499 A.2d 581, 582

(Pa. Super. Ct. 1985) ("To sustain a claim of unjust enrichment, a claimant must show that the

party against whom recovery is sought either wrongfully secured or passively received a benefit

that it would be unconscionable for her to retain.").

Sköld's allegations support a prima facie case for unjust enrichment.  As to the first

element, he alleges that he has conferred benefits on the Defendants as a result of their use of the

Restoraderm trademark in marketing and selling products and the related goodwill.  Compl.

¶¶ 39-41, 79.  As to the third element, he alleges that the Defendants have "registered the term Restoraderm as a trademark in the United States and other jurisdictions" and "have failed to return the Restoraderm trademark to Sköld in accordance with the 2004 Agreement."  *Id.* ¶ 37.  It can also be inferred that this element is satisfied because it would be inequitable or unjust for the Defendants to retain the benefit of the Restoraderm trademark (which allegedly should have been returned to Sköld upon termination of the Agreement) without payment of value.  As to the second element, although Sköld has not explicitly pled that the Defendants appreciated such benefits, such appreciation is plausible given the Defendants' acts of marketing (and deriving profits from) products containing the Restoraderm trademark.  This same reasoning applies to L.P., as well, which is also not a party to the 2004 Agreement.

Based on the allegations in the Complaint, Sköld has plausibly stated a claim for unjust enrichment against S.A. and L.P.  Accordingly, the motion to dismiss the unjust enrichment claim for failure to state a claim against S.A. and L.P. shall be denied.[8]

### E.    *Unfair Competition*

The Defendants contend that Sköld's unfair competition claim should be dismissed because of the gist of the action doctrine, which bars plaintiffs from recovering under tort theories for failure to perform a contract.  *See* L.P./Inc. Mot. to Dismiss at 8; *see also Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014).  More specifically, the Defendants contend that Sköld "attempts to recast a breach of contract claim as an unfair competition tort claim."  L.P./Inc. Mot. to Dismiss at 8.

---

[8]    The Defendants also argue that the unjust enrichment claim is untimely because the Complaint was filed beyond the four-year statute of limitations.  L.P./Inc. Mot. to Dismiss at 6-8.  Sköld repeats the arguments he raised in the breach of contract context.  Pl.'s L.P./Inc. Opp'n at 10-12.  The Court finds, for the purposes of this motion to dismiss, that the unjust enrichment claim similarly is not barred by the statute of limitations.

The analysis of this argument is complicated by the fact that, on December 15, 2014—two weeks after L.P. and Inc. filed their motion to dismiss, but a week prior to Sköld filing his opposition—the Pennsylvania Supreme Court decided *Bruno v. Erie Insurance Co.*, in which, for the first time, it opined on the standard to be used in evaluating the gist of the action doctrine. The court held that the "critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract" is "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint." *Bruno*, 106 A.3d at 68.

Given that neither party has had the opportunity to evaluate whether *Bruno*'s standard differs from prior gist of the action doctrine jurisprudence developed by the federal courts and lower Pennsylvania state courts[9] or to analyze the unfair competition claim under *Bruno*'s standard, the Court finds that it would be premature to engage in an analysis of this claim without the benefit of the parties' arguments. The Court shall thus defer judgment on the motions to dismiss this count at this time, as it has already directed the parties to provide supplemental briefing on the unfair competition claim in light of *Bruno*, after which the Court will rule on the motions to dismiss this claim.

**F.      *Personal Jurisdiction Over Galderma S.A.***

Sköld contends that this Court may exercise personal jurisdiction over S.A. on the Lanham Act Claims pursuant to the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2).  Pl.'s S.A. Opp'n at 9-10.  Furthermore, he contends that the forum selection clause in the 2004

---

[9]      *See, e.g.*, *Williams v. Hilton Group PLC*, 93 F. App'x 384, 385 (3d Cir. 2004); *Vives v. Rodriguez*, 849 F. Supp. 2d 507, 516 (E.D. Pa. 2012); *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 527 n.1 (W.D. Pa. 2011); *Sunburst Paper, LLC v. Keating Fibre Int'l*, No. 06-3957, 2006 WL 3097771, at *2 n.2 (E.D. Pa. Oct. 30, 2006); *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833-34 (E.D. Pa. 2000); *accord eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (announcing the standard for the analysis under the gist of the action doctrine).

Agreement subjects S.A. to jurisdiction in this Court.  *Id.* at 6-8.  S.A. counters that it is not subject to jurisdiction under Rule 4(k)(2) because it does not have sufficient contacts with the United States as a whole to satisfy that Rule's requirements and because Sköld fails to properly allege Lanham Act claims against it.  S.A. Reply at 4-9.  S.A. rejects Sköld's claim that this Court has jurisdiction over S.A. under the forum selection clause, because, it argues, the breach of contract claim is time-barred[10] and because it cannot be bound by the forum selection clause in a contract to which it is not a party or a successor-in-interest to a party.  *Id.* at 2-4.  The Court will first address the jurisdictional arguments involving the Lanham Act claims, followed by the arguments involving the forum selection clause.

### 1.     Rule 4(k)(2)

The Due Process Clause of the Fourteenth Amendment to the Constitution permits personal jurisdiction so long as the nonresident defendant has certain minimum contacts with the forum such that maintenance of the suit does not offend "'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Federal Rule of Civil Procedure 4(k)(2), colloquially termed the "federal long-arm statute," "sanctions personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of U.S. law, but is without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state."  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 n.7 (3d Cir. 2003).  Under this paradigm, a court may exercise specific personal jurisdiction over a defendant where the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of

---

[10]   The Court has already addressed the merits of the statute of limitations argument and denied the Defendants' motion to dismiss on that ground.  *See supra* subsection IV.C.1.  It will not reiterate the discussion here.

or related to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 468, 472 (1985). The exercise by a court of general personal jurisdiction is appropriate where the defendant's contacts with the forum "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). For the purposes of a Rule 4(k)(2) general jurisdiction analysis, however, the relevant "forum State" is the United States as a whole, rather than any individual state. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254 (3d Cir. 2000).

The Rule applies "in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002). This Court can exercise jurisdiction pursuant to this rule only where:

> (A)  the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B)  exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). In other words, for a Court to constitutionally exercise personal jurisdiction over a foreign defendant under the Rule: (1) there must be a claim arising under federal law; (2) the defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the defendant must have sufficient contacts with the United States as a whole so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law. *Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 455 (3d Cir. 2004). Although S.A. concedes that it is beyond the jurisdictional reach of any state court of general jurisdiction, *see* S.A. Reply at 5 n.2, it contends that neither of the other two prongs are met. First, it argues that Sköld's Complaint does not state a Lanham Act claim against it and hence it should be dismissed. *Id.* at 5. Second, it argues

that it does not have sufficient contacts with the United States as a whole such that the exercise of jurisdiction comports with due process. *Id.* This Court agrees with the second point and, thus, it declines to address S.A.'s argument regarding whether Sköld has alleged claims "arising under federal law."

S.A. argues that Sköld has not alleged that S.A. has sufficient minimum contacts with the United States as a whole to satisfy the Rule 4(k)(2) test. Sköld counters that the standard to be followed in analyzing satisfaction of the third prong "is similar to that of personal jurisdiction for a particular state: 'general jurisdiction is available when the defendant's contacts unrelated to the litigation are continuous and systematic,'" and proffers that S.A.'s website states that S.A. maintains a Research and Development facility in the United States, claiming that the existence of this facility is sufficient to satisfy this prong. Pl.'s S.A. Opp'n at 10 (quoting *BP Chemicals*, 229 F.3d at 262 (3d Cir. 2000)) (internal quotation marks omitted); *see also* Michie Decl. ¶ 8, Ex. E.

To the extent Sköld invokes the standard governing the exercise of general personal jurisdiction over a nonresident corporate defendant, this Court very recently explained in *Farber v. Tennant Truck Lines, Inc.*, — F. Supp. 3d —, 2015 WL 518254 (E.D. Pa. Feb. 9, 2015), that the "unadorned 'continuous and systematic' contacts standard for determining general jurisdiction is no longer viable" in this District in light of the U.S. Supreme Court's decisions in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), and held that those cases' more stringent "essentially at home" standard is the operative standard for determining the applicability of general jurisdiction. *Farber*, 2015 WL 518254, at *9. "[T]he inquiry . . . is whether corporation's 'affiliations with the state are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 754 (quoting *Goodyear*, 131 S. Ct. at 2851). Because the language of the Rule

4(k)(2) jurisdictional analysis previously has tracked the language of the due process jurisdictional analysis under *International Shoe* and its progeny, *see BP Chemicals*, 229 F.3d at 259, this Court will update accordingly the Rule 4(k)(2) analysis to incorporate the *Goodyear/Daimler* standard. *Cf., e.g.*, *Archangel Diamond Corp. Liquidating Trust v. OAO Lukoil*, — F. Supp. 3d —, 2014 WL 7232341, at *13-16 (D. Colo. Dec. 18, 2014); *Toumazou v. Turkish Republic of N. Cyprus*, — F. Supp. 3d —, 2014 WL 5034621, at *6 (D.D.C. Oct. 9, 2014); *Best Odds Corp. v. iBus Media Ltd.*, No. 13-2008, 2014 WL 2527145, at *5 (D. Nev. June 4, 2014).

*Goodyear* and *Daimler* "make clear that even a company's 'engage[ment] in a substantial, continuous and systematic course of business' is alone insufficient to render it at home in a forum." *Farber*, 2015 WL 518254, at *10 (quoting *Sonera Holding B.V. v. Çukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir.) (per curiam), *cert. denied*, 134 S. Ct. 2888 (2014)). Thus, a nonresident trucking company that completed 4600 deliveries in Pennsylvania, earned approximately 3% of its revenue from Pennsylvania deliveries, employed drivers who traveled hundreds of thousands of miles per year in Pennsylvania, purchased tens of thousands of gallons of gas per year in Pennsylvania, and made payments of over $1.7 million to Pennsylvania-based carriers over the course of several years could not be subjected to general personal jurisdiction in Pennsylvania. *Id.* at *9-11. "Mere deliveries in Pennsylvania, even occurring at regular intervals, are insufficient to justify Pennsylvania's assertion of general jurisdiction over [a nonresident corporate defendant] in causes of action unrelated to those deliveries." *Id.* at *11 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)).

Here, even assuming *arguendo* that S.A. does own and operate a single research and development facility in the United States, as Sköld contends (and S.A. denies, *see* S.A. Reply at 8), that fact is insufficient to render S.A. "essentially at home" in the United States. *See BP*

*Chemicals*, 229 F.3d at 258-59 (declining to find sufficient contacts where the defendant

Taiwanese corporation exported its products to the United States, held an ownership interest in a

Delaware corporation, required its personnel to travel to the United States for training);

*Toumazou*, 2014 WL 5034621, at *6 (declining to find sufficient contacts where the plaintiff

alleged that the defendant maintained a "West coast" and "NY" representative, participated in a

conference in the "Southern United States," and attempted to intervene in an Indiana litigation);

*Best Odds Corp.*, 2014 WL 2527145, at *5 (declining to find sufficient contacts, even in light of

the defendant's media kit, in which it self-described its "significant U.S. presence"); *Chavez v.

Dole Food Co.*, 947 F. Supp. 2d 438, 443 (D. Del. 2013) (finding that a company's "ownership

of a facility in Delaware, movement of its products through Delaware, and sale of its products in

Delaware" did not render the company "at home" in Delaware).  This Court concludes that it

cannot exercise personal jurisdiction over S.A. under Rule 4(k)(2).

### 2.        Forum Selection Clause

Personal jurisdiction is, however, a waivable right, and litigants can give "express or

implied consent to the personal jurisdiction of the court" through a "variety of legal

arrangements," including forum selection clauses in contracts executed by the parties.  *Ins. Corp.

of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (quoting *Nat'l

Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)) (internal quotation marks omitted).

And this is Sköld's final potential avenue for this Court to have personal jurisdiction over

S.A.:  the forum selection clause found in section 9.10 of the 2004 Agreement.  The section reads,

in relevant part:

> Each Party hereby submits itself for the purpose of this Agreement and any
> controversy arising hereunder to the exclusive jurisdiction of the state and federal
> courts located in the Commonwealth of Pennsylvania, and any courts of appeal
> therefrom, and waives any objection on the grounds of lack of jurisdiction

(including, without limitation, venue) to the exercise of such jurisdiction over it
by any such courts.

Compl. Ex. A § 9.10.  The Court must make two inquiries in determining the clause's

applicability to its jurisdictional analysis here: first, whether the forum selection clause binds

S.A. as a non-signatory third party, and, second, whether the claims Sköld alleges against S.A.

arise out of the agreement and are thus governed by its terms.

### a.   *Whether the clause binds S.A.*

Nonsignatory third parties who are "closely related" to a contractual relationship are

bound by the forum selection clauses contained in the agreements underlying that relationship.

*See, e.g.*, *AAMCO Transmissions, Inc. v. Romano*, — F. Supp. 3d —, 2014 WL 4105986, at *5

(E.D. Pa. Aug. 21, 2014).  In determining whether a nonsignatory is closely related, the Court

must consider several factors, including the nonsignatory's ownership of the signatory, the

relationship between the two parties, and whether the nonsignatory received a direct benefit from

the agreement.  *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, — F.3d —, 2015 WL 774694, at

*3 (3d Cir. Feb. 25, 2015).  Further, third parties "that should have foreseen governance by the

clause may also be bound to it."  *First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Balt., Inc.*, No.

11-5821, 2012 WL 1150131, at *3 (E.D. Pa. Apr. 5, 2012).

The Court may apply the forum selection clause to a nonsignatory if the totality of the

circumstances makes it fair and reasonable to bind the nonsignatory to the clause because it is

foreseeable to the nonsignatory that it would become involved in the contract dispute.  *Lefkowitz*

*v. McGraw-Hill Cos.*, No. 13-1661, 2013 WL 3061549, at *3 (E.D. Pa. June 9, 2013); *see also*

*Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (recognizing

that using "[a] literal approach to interpreting forum selection clauses" could undermine their

purpose); *Adams v. Raintree Vacation Exch.*, 702  F.3d 436, 441 (7th Cir. 2012) (reasoning that

23

"[w]ere it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against [nonparties], such clauses often could easily be evaded").

Sköld alleges that S.A. is the owner of Inc., the successor-in-interest to Collagenex (the original signatory).  Compl. ¶ 8.  He also alleges that S.A. has received a direct benefit from the agreement: according to the Complaint, S.A. has "taken the fruits of the Sköld–CollaGenex contract—the trademark and related goodwill associated with the Restoraderm® name—and used those assets in the marketing and sale of its Cetaphil® products."  Pl.'s S.A. Opp'n at 8. *See Synthes, Inc. v. Emerge Med., Inc.*, 887 F. Supp. 2d 598, 607 (E.D. Pa. 2012) (recognizing that a forum selection clause also applies to a nonsignatory third party where the third party's *conduct* is closely related to the contractual relationship or the contractual dispute and where the third party enjoys financial benefit from the contract).  He further alleges that S.A. has "registered the Restoraderm® name as a trademark in multiple jurisdictions and has sued to prevent other entities using the domain name Restoraderm.com."  Pl.'s S.A. Opp'n at 8.

It is certainly plausible from the totality of the circumstances alleged that S.A. was closely related to the contractual relationship between Sköld and Inc.  As a nonsignatory, it gained a benefit from the use of a trademark that was transferred to its subsidiary (as successor-in-interest) via a contract between the plaintiff and the subsidiary's predecessor-in-interest.  Given its engagement in the marketing and sale of the Cetaphil/Restoraderm product, it also should reasonably have foreseen becoming involved in the relevant dispute over the Defendants' alleged refusal to revert the trademark back to Sköld after Inc. terminated the 2004 Agreement and after S.A. continued to register and use the very trademark at issue in marketing and selling its products.  Thus, the Court finds it eminently fair and reasonable that the forum selection clause binds S.A. as a nonsignatory party.

24

S.A. argues that the law requires the non-signatory foresee "being sued *on the contract itself*." S.A. Reply at 4 (emphasis in original). In support of this argument, it includes a truncated quote from *Burtch v. Security Pacific Bank Oregon* (*In re Mushroom Transportation Co.*), to the effect that to demonstrate the "foreseeability [] required to enforce such a clause against a nonparty to an agreement" a plaintiff must establish that the nonsignatory "should have foreseen governance *by the clause*." 247 B.R. 395, 398 (E.D. Pa. 2000) (emphasis in original). S.A. omits the portion of the passage that undermines its position: the court in *Mushroom Transportation* stated that forum selection clauses are enforceable only against nonsignatories "**that are closely related to the contractual relationship** *or* that should have foreseen governance by the clause." 247 B.R. at 398 (emphasis added) (citation and internal quotation marks omitted). The Court has already found that S.A. is closely related to the contractual relationship between Sköld and Inc. Furthermore, as the Court's discussion above makes plain, S.A. *should have* foreseen governance by the clause based on its relationship to the signatory parties and to the dispute at issue. S.A. was closely related to the Agreement through the ownership of its subsidiary Inc., it derived a direct benefit from the Agreement, and it was closely related to the dispute through its actions involving the Restoraderm trademark pre- and post-termination of the Agreement. Thus, the "totality of the circumstances makes it fair and reasonable" to bind the nonsignatory party to the forum selection clause. *Lefkowitz*, 2013 WL 3061549, at *3. The Court therefore finds the 2004 Agreement's forum selection clause binds S.A. as a non-signatory third party.

This is only the first part of the analysis, however; the Court yet may be unable to enforce the forum selection clause and exercise jurisdiction over S.A. if the claims Sköld alleges do not "arise under" the 2004 Agreement.

b.      *Whether the clause applies to Sköld's claims against S.A.*

Forum selection clauses are treated as ordinary contract provisions and are subject to the

ordinary rules of contract interpretation.  *See M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1

(1972).  First, a court must determine whether the clause states the parties' intentions

unambiguously.  "To be 'unambiguous,' a contract clause must be reasonably capable of only

one construction."  *Otto v. Erie Ins. Exch.*, 11 F. Supp. 3d 482, 483 (E.D. Pa. 2014).  The only

reasonable construction of the clause in the 2004 Agreement ("Each Party hereby submits itself

for the purpose of this Agreement and any controversy arising hereunder to the exclusive

jurisdiction of the state and federal courts located in the Commonwealth of Pennsylvania . . . .")

is that any dispute between the parties arising under the Agreement must be litigated in

Pennsylvania.  This clause on its face is unambiguous.  *See Health Robotics, LLC v. Bennett*, No.

09-0627, 2009 WL 1708067, at *3 (E.D. Pa. June 16, 2009).  Having so found, this Court must

now determine whether Sköld's claims "arise out of the Agreement" and are thus covered by the

terms of the forum selection clause.  *Id.*; *see also Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d

688, 692 (8th Cir. 1997) (stating that before a court can consider enforcing a forum selection

clause, "it must first decide whether the clause applies to the type of claims asserted in the

lawsuit").[11]

The Third Circuit's decision in *Crescent International v. Avatar Communities, Inc.*, 857

F.2d 943 (3d Cir. 1988) (per curiam), is instructive on this question.  The issue in *Crescent*

---

[11]  At the outset, the Court recognizes the restrictive "arising under" language present in the 2004 Agreement's forum selection clause.  Several courts have held that the term "relating to" in a clause casts a wider net than the term "arising out of" or "arising under," and thus drawing analogies to other cases "is useful only to the extent those other cases address contact language that is the same or substantially similar."  *John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997) (Alito, J.); *see also id.* at 1074-75 (interpreting the term "arising in relation to" to mean that the dispute has some "logical or causal connection to the contract"); *Vt. Pure Holdings Ltd. v. Descartes Sys. Grp., Inc.*, 140 F. Supp. 2d 331, 335 (D. Vt. 2001) ("[T]he term 'relating to' has a much broader meaning than 'arising out of.'").  As a result, the analogous cases cited by the Court in this Section all involve forum selection clauses containing "arising out of" language.

involved interpretation of a forum selection clause in an agreement between Crescent, a Pennsylvania-based corporation, and Avatar, a Florida-based corporation, under which Crescent sold real estate owned by Avatar in return for commissions.  The agreement chose Florida law and provided that "any litigation upon any of [its] terms . . . shall be maintained" in a state or federal court in Miami, Florida.  *Id.* at 944.  Crescent, however, filed an action in the Eastern District of Pennsylvania alleging breach of contract and several related, albeit noncontractual, claims.  Avatar moved to dismiss, arguing that the forum selection clause applied to noncontractual as well as contractual claims and, as such, the action was in the wrong forum. The district court agreed and dismissed the suit.

Crescent argued on appeal that the forum selection clause was narrowly drafted and could not apply to noncontractual claims.  The Third Circuit, however, determined that the pleading of alternate noncontractual theories does not alone allow a party to avoid enforcement of a forum selection clause "if the claims asserted arise out of the contractual relation and implicate the contract's terms."  *Id.* at 945.  The court held that the district court correctly construed the forum selection clause, concluding that "[a]lthough only one of Crescent's claims is based on a breach of contract theory, all of them involve allegations arising out of the agreement implicating its terms."  *Id.*; *see also Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) ("[W]here the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain."), *overruled on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989).

Several decisions involving similarly worded forum selection clauses in similar factual scenarios from courts in other jurisdictions are also helpful in resolving this question.  In *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600 (7th Cir. 1994), the Seventh Circuit

expressed its broad view on the applicability of forum selection clauses to claims, holding that "all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement" for purposes of enforcing such clauses. *Id.* at 603. In *Laserdynamics, Inc. v. Acer America Corp.*, 209 F.R.D. 388 (S.D. Tex. 2002), the Southern District of Texas held that important to the forum selection clause analysis was a determination of the "spirit" of the underlying agreement, as well as the subject matter comprising the agreement's "nucleus." *Id.* at 391. And finally, the Southern District of New York, in finding that a plaintiff's action "clear[ly]" arose pursuant to the contract and enforcing a forum selection clause, looked to the fact that the plaintiff's "entire business relation with the defendant . . . stemmed from the contract," and, as a result "[a]ny determination with respect to plaintiff's claims will require consideration of the contract and of the parties' respective rights pursuant to the contract." *YWCA v. HMC Entm't, Inc.*, No. 91-7943, 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992).

Taking into account the above analysis, the Court finds that the forum selection clause in the 2004 Agreement applies to Sköld's claims against S.A. Those claims arise out of the 2004 Agreement and implicate its terms. *See Crescent*, 857 F.2d at 945. In fact, Sköld's "entire business relation" with the Galderma entities with respect to the Restoraderm trademark stems from the 2004 Agreement. *YWCA*, 1992 WL 279631, at *4. Thus, determination of Sköld's claims implicate the contract's terms and will require consideration of the contract and the parties' respective rights pursuant to the contract. *See id.* The 2004 Agreement is not "merely one of the final manifestations" of the "ongoing business relationships between the parties"—a situation in which forum selection clauses have been held inapplicable to noncontractual claims. *Gen. Envtl. Sci. Corp. v. Horsefall*, 737 F. Supp. 664, 667-68 (N.D. Ohio 1990). Quite the

contrary, the 2004 Agreement was the final manifestation of the relationship between Sköld and

Collagenex and the *only* manifestation of a relationship between Sköld and any Galderma entity.

The "nucleus" of the 2004 Agreement is the transfer of the Restoraderm trademark, and

the "spirit of the . . . agreement contemplate[d] the rights and duties of the parties" concerning

the Restoraderm trademark. *Laserdynamics*, 209 F.R.D. at 389.  Accordingly, if any of the rights

or obligations in the 2004 Agreement were "threatened or impaired by an act of the parties or

their privities, that act gives rise to a dispute under the agreement." *Id.*  Sköld's allegations that

the acts of the Defendants, in declining to revert the Restoraderm intellectual property to him

upon termination of the 2004 Agreement and continuing to market and sell products bearing the

Restoraderm mark, are the nucleus of his claims that his rights under the 2004 Agreement have

been impaired.  S.A. should be expected to answer to those claims.

At bottom, because "all disputes the resolution of which arguably depend on the

construction of an agreement 'arise out of' that agreement" for purposes of enforcing a forum

selection clause, *Omron*, 28 F.3d at 603, the Court holds that S.A. cannot avoid enforcement of

the forum selection clause because the non-contractual claims asserted "arise out of the

contractual relation and implicate the contract's terms." *Crescent*, 857 F.2d at 945.  When the

substance of the plaintiff's claims, stripped of their labels, fall within the scope of the forum

selection clause, the opposing party cannot avoid it.  The dispute between Sköld and S.A. arises

out of the 2004 Agreement such that the forum selection clause is applicable against S.A. on all

claims Sköld has alleged.

The exercise of personal jurisdiction over S.A. is proper.[12]  The motion to dismiss for lack of personal jurisdiction shall be denied.

An appropriate Order follows.


Dated:  **March 20, 2015**



**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**

---

[12] In its Reply brief and at oral argument, S.A. advanced the argument that "even if the 2004 Agreement's forum selection clause were somehow to apply to Galderma S.A., Sköld ignores that he still needs to meet the constitutional minimum contacts test. . . ."  S.A. Reply at 4.  The forum selection clause is one of the "variety of legal arrangements" through which parties impliedly consent to the personal jurisdiction of a particular court.  *See Insurance Corp. of Ireland*, 456 U.S. at 703.  S.A.'s argument is meritless.  Mandating that a plaintiff meet the constitutional minimum contacts test for personal jurisdiction as a prerequisite to enforcement of a forum selection clause would utterly defeat the purpose of forum selection clauses.  Indeed, "Pennsylvania law provides that were a party has consented to personal jurisdiction via a contractual provision, the minimum contacts due process analysis usually employed to analyze jurisdiction on a Rule 12(b)(2) motion to dismiss is not appropriate."  *Synthes*, 887 F. Supp. 2d at 606 n.4 (internal punctuation omitted).