IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS SKÖLD,<br>　　　　　Plaintiff, | |
| v. | CIVIL ACTION |
| GALDERMA LABORATORIES, L.P.;<br>GALDERMA LABORATORIES, INC.;<br>and GALDERMA S.A.,<br>　　　　　Defendants. | NO. 14-5280 |

## OPINION

### I.　INTRODUCTION

Having denied defendants' Motion for Summary Judgment in an order dated January 4, 2016 (ECF No. 87), the Court issues this opinion by way of further explanation of its decision. Defendants moved for summary judgment on the grounds that plaintiff does not own the disputed trademark, that plaintiff's claims are barred by the statute of limitations, and that, alternatively, the parties' agreement did not concern the disputed trademark.

### II.　FACTS

The parties dispute virtually every material fact in this case. As noted in the Court's January 4, 2016, order, the disputes include: the extent and nature of Plaintiffs' presentations of Restoraderm to companies in 2001; whether Plaintiff had developed a Restoraderm product before the 2002 agreement with CollaGenex; whether Plaintiff's relationship with CollaGenex ever resulted in a marketable product; the content and extent of Defendants' communications with Plaintiff from 2008-2009; when Plaintiff recognized, or should have recognized, that Defendants intended to retain the trademark; and whether Defendants led Plaintiff to believe that their relationship would continue beyond 2008, among others. *See* Defendants' Statement of

Undisputed Material Facts at ¶¶ 13, 20, 29, 33-34, 48, 81-85, 96, 102-04; Plaintiffs' Response at ¶¶ 13, 20, 29, 33-34, 48, 81-85, 96, 102-04.  By way of further example, defendants' Reply to plaintiff's Counter-Statement of Facts rejected all thirty-five factual representations made by plaintiff.  *See* Defendants' Reply at ¶¶ 1-35.  As the Court writes primarily for the parties, only the disputed facts that specifically preclude summary judgment will be addressed.

### III. DISCUSSION

#### A. Standard

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Alabama v. North Carolina*, 560 U.S. 330, 345 (2010) (citations and internal quotation marks omitted).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."  *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  *Celotex Corp.*, 477 U.S. at 317; *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991).  The reviewing court should view the facts in the light most favorable to the non-moving party and "draw all reasonable inferences in that party's favor."  *Burton v. Teleflex Inc.*, 707 F.3d 417,

2

425 (3d Cir. 2013). However, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (citing *Anderson*, 477 U.S. at 252).

Strict adherence to these principles of summary judgment is "particularly significant in a trademark or tradename action, where summary judgments are the exception," rather than the rule. *Country Floors*, 930 F.2d at 1062-63.

### A. Trademark Ownership

Defendants move for summary judgment on the grounds that they own the Restoraderm mark pursuant to CollaGenex's February 28, 2002 trademark application and the 2002 Agreement between Plaintiff Thomas Sköld ("Sköld") and CollaGenex, defendants' predecessor in interest. Mtn. at 13, 18; JA 23-30. Sköld does not dispute that Restoraderm was registered by CollaGenex, but argues that he established common law ownership of the trademark through prior use in commerce and that defendants are estopped from challenging the validity of the common law trademark.

#### 1. *2002 Agreement*

In response to defendants' argument that they own the Restoraderm mark pursuant to the 2002 Agreement, Sköld contends that the subsequent 2004 Agreement voided the 2002 Agreement in its entirety, including the trademark provision upon which defendants rely. Opp'n at 13. Contract disputes may be resolved as a matter of law where the contract is unambiguous, as is the case here. *See Tamarind Resort Assocs. v. Gov't of Virgin Islands*, 138 F.3d 107, 110 (3d Cir. 1998); *see also American Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co.*, 62 F.3d 574 (3d Cir. 1995).

The 2002 Agreement is clear with regard to ownership of the trademark: "[a]ll trade marks applied for or registered (including 'Restoraderm') shall be in the sole name of CollaGenex and be the exclusive property of CollaGenex during the Term and thereafter . . . ." JA 15.  The language of the 2004 Agreement is equally clear:

> 9.12 <u>Entire Agreement of the Parties</u>.
> This Agreement hereby, together with the Schedules and Exhibits, constitute and contain the complete, final and exclusive understanding and agreement of the Parties and cancels and supersedes any and all prior negotiations, correspondence, understandings and agreements (*including the Original Agreement*) whether oral or written, between the Parties respecting the subject matter hereof *and* thereof . . . .

JA 108 (emphasis added).  To be unambiguous, "an agreement must be reasonably capable of only one construction." *American Flint Glass Workers Union, AFL-CIO*, 62 F.3d at 581.  The 2004 Agreement cancels all prior agreements – specifically referring to the 2002 Agreement – with respect to "the subject matter hereof," *i.e.* the 2004 Agreement, "and thereof," *i.e.* the 2002 Agreement.  This provision has only one reasonable construction: any claim to ownership of the trademark defendants had through the 2002 Agreement was voided by the 2004 Agreement.

        **2.**     *Registration and Prior Use*

Apart from the 2002 Agreement, defendants assert ownership of the Restoraderm mark pursuant to the trademark application that CollaGenex filed on February 28, 2002, after which Restoraderm was registered in CollaGenex's name.  JA 23-30.  Federal registration of a trademark is prima facie evidence of the mark's validity, the registrant's ownership thereof, and the exclusive right to use the mark in commerce.  *See* 15 U.S.C. 1115(a); 15 U.S.C. 1057(c).  To prevail, Sköld "must establish that [he] had prior rights or 'priority' in the mark." *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 315 (3d Cir. 1999) (citing *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978) ("relief is only available if the plaintiff establishes priority")).  Thus, the issue is whether Sköld has presented sufficient

4

evidence such that a reasonable jury could find that he established use of the Restoraderm mark prior to defendants' trademark registration.

Defendants cite *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir. 1985) for the proposition that Sköld must meet a four-factor test to establish prior use of the mark. In that trademark case, the Third Circuit examined the disputed product's "market penetration" to determine whether the use was sufficient to support injunctive relief. *Id.* at 1400. The Court identified four factors that should be considered: "(1) the volume of sales of the trademarked product; (2) the grown trends (both positive and negative) in the area; (3) the number of persons actually purchasing the product in relation to the potential number of customers; and (4) the amount of product advertising in the area." *Id.* at 1397-99.

While the thirty-year old holding in *Natural Footwear* is "applicable to the recurring fact pattern of concurrent use . . . in different regions," it is distinguishable here. *Lucent Info. Mgmt., Inc. v. Lucent Technologies, Inc.*, 186 F.3d 311 (3d Cir. 1999). In this case, the Court is considering summary judgment rather than injunctive relief, there is no allegation of concurrent use, geographic market penetration is not at issue, and the nature of the product itself indicates it was never intended to be directed to members of the public at large. To rigidly apply the *Natural Footwear* factors without taking into account the distinguishing circumstances of this case would be to disregard other relevant Third Circuit precedent.

For example, defendants lean heavily on the allegation that Sköld did not personally sell a Restoraderm product to the public. Mtn. at 16. Yet, the Third Circuit has cautioned that a district court should consider whether the intended "customer-type, retail versus professional," which in this case could be the companies to whom Sköld presented his technology, presents a genuine issue of material fact. *Id.* at 1066. The Third Circuit has also recognized that "[w]hile

5

sales are the typical and clearest evidence, they are not the *sine qua non* of use in commerce." *ITT Industries, Inc. v. Wastecorp, Inc.*, 87 Fed. App'x 287, 296, n. 12 (3d Cir. 2004) (citing *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 417-18 (1st Cir. 1951)). Similarly, the Federal Circuit has held that "one should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use." *West Florida Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1125-26 (Fed. Cir. 1994).

Here, Sköld alleges the following facts, each of which is supported by record evidence:

- In or around 2000, Sköld developed a skin-based drug delivery technology that he named "Restoraderm." Sköld created several samples of his product and began searching for a corporate partner in September 2001. SA 634-35.

- Sköld traveled to the United States and arranged meetings with Johnson & Johnson, Medicis Pharmaceutical Corp., Allergan, Inc., Bi-Coastal Pharmaceutical Corp., and CollaGenex Pharmaceuticals, Inc., to discuss his Restoraderm technology. JA 312-13; SA 635, 656-57.

- On September 11, 2001, Sköld gave a presentation to representatives from Johnson & Johnson regarding his Restoraderm technology. JA 517-45.

- On September 12, 2001, Sköld conducted a thirty-minute phone call with a representative of Medicis discussing his Restoraderm technology. JA 328-29.

- On September 12, 2001, Sköld met with representatives of CollaGenex and discussed his Restoraderm technology. JA 516.

- In or around December 2001-January 2002, Sköld supplied CollaGenex with physical samples of Restoraderm in small, aerosol containers labeled "Restoraderm." SA 636, 651-52.

- In January 2002, Sköld presented a paper entitled "Restoraderm: A Product and a dermal delivery technology" at the Caribbean Dermatology Conference and delivered copies of the paper to attendees. SA 635.

- On February 12, 2002, Sköld and CollaGenex signed a development and licensing agreement ("the 2002 Agreement"), in which "Restoraderm" was referenced by name under the "Trade Marks" heading. JA 7-21.

- Also on February 12, 2002, CollaGenex issued a press release announcing that it had licensed a technology "named Restoraderm™." SA 676.

Thus, Sköld has presented evidence that he developed and manufactured a physical product that he labeled "Restoraderm," that he pitched his technology to at least three large

companies, that he provided samples to a company with which he intended to do business, that he published materials on Restoraderm to a relevant audience, that he distributed Restoraderm literature at a dermatological conference, and that CollaGenex recognized a Restoraderm trademark in its 2002 press release.[1]  In reviewing this evidence, defendants vigorously contest the veracity of Sköld's allegations (Opp'n at 4-8) even though it is well-established that "[c]redibility determinations that underlie findings of fact are . . . inappropriate to the legal conclusions necessary to a ruling on summary judgment."  *Country Floors, Inc.*, 930 F.2d at 1062.  The Court may only consider the sufficiency of the evidence, not its credibility.  There are genuine disputes of material fact as to Sköld's prior use of the mark, and Sköld has supported his claims with sufficient record evidence.  Therefore, summary judgment must be denied.

       3.    *Licensee Estoppel*

Sköld further argues that defendants are precluded from challenging his ownership of the Restoraderm trademark due to licensee estoppel.  Opp'n at 20-22.  The doctrine of licensee estoppel prevents a transferee from claiming any rights against the licensor that are inconsistent with the terms of the license.  *See e.g.*, *Seven-Up Bottling Co. v. Seven-Up Co.*, 561 F.2d 1275, 1279-80 (8th Cir. 1977); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000).  The Third Circuit, however, has explicitly declined to address "the propriety or applicability" of the licensee estoppel doctrine.  *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 825, n. 14 (3d Cir. 2006).  Because the Court has denied summary judgment on other grounds, it need not reach the issue here.

---

[1] Defendants contest Sköld's interpretation of CollaGenex's intention in adding the "™" symbol to its 2002 press release.  At oral argument, defense counsel argued that the use of the "™" symbol is "an indication that the person using it is claiming trademark rights . . . there's nothing you'll find anywhere in the law that some type of rights have to be established before you use the tm [sic] symbol."  (Transcript of Oral Argument at 48-49).  Although counsel's argument is reasonable, at the summary judgment stage, Sköld is entitled to all reasonable inferences in his favor; there is no record evidence either way as to CollaGenex's purpose in describing the technology as "Restoraderm™."  Therefore, Sköld is entitled to the reasonable inference that CollaGenex was recognizing the common law trademark.

### B. Parameters of the 2004 Agreement

Defendants also argue that Sköld's claims should be dismissed because the 2004 Agreement between Sköld and CollaGenex did not involve the assignment of trademark rights. Mtn. at 25. Sköld contends that the Restoraderm mark was one of the "Purchased Assets" referenced in the 2004 Agreement and required to be returned to him upon termination of the Agreement. Opp'n at 14-15; JA 87-109. In the alternative, Sköld asserts that the 2004 Agreement is ambiguous. Opp'n at 16.

Under Pennsylvania law, "'[a] contract will be found ambiguous 'if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning.'" *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 614 (3d Cir. 1995) (quoting *Samuel Rappaport Family P'ship v. Meridian Bank*, 657 A.2d 17, 21-22 (Pa. Super. Ct. 1995) (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993))). If both parties have proffered an interpretation that can be supported by the written contract, "a decision as to which of the competing interpretations of the contract is the correct one is reserved for the factfinder," as the factfinder will be able to "examine the content of the extrinsic evidence (along with all the other evidence) in order to make this determination." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 94-95 (3d Cir. 2001); *see also Newport Assocs. Dev. Co.,* 162 F.3d at 792 ("If the nonmoving party presents a reasonable alternative reading of the contract, then a question of fact as to the meaning of the contract exists which can only be resolved at trial").

The 2004 Agreement required all "Purchased Assets" to be returned to Sköld upon termination of the Agreement. JA 105. The parties dispute whether the Restoraderm trademark was a purchased asset, which the Agreement defines as:

(a) The Restoraderm Intellectual Property;

(b) The Book and Records relating to the Restoraderm Intellectual Property;

(c) All rights and claims of Sköld and its Affiliates against Third Parties relating to the Purchased Assets, choate or inchoate, known or unknown, contingent or otherwise; and

(d) All goodwill, if any, relating to the foregoing.

JA 92. The Agreement specifically excludes the following "enumerated assets" from the purchased assets:

(a) Books and records that Sköld or its Affiliates are required to retain pursuant to any applicable law or regulations, other than the Books and Records; and

(b) General books of account and books of original entry that comprise Sköld's or its Affiliates' permanent accounting or tax records.

JA 92. Sköld asserts that he spoke with counsel for CollaGenex prior to signing the 2004 Agreement and was assured that the Restoraderm trademark was part of the purchased assets. JA 50-52; SA 640. Sköld has also offered evidence that Maud Robert, defendants' Senior Trademark & Counterfeit Manager, conceded that "[w]e refer to goodwill with respect to all kinds of intangible assets, so including trademarks." SA 710. Quintin Cassady, Vice President and General Counsel of Galderma Laboratories, L.P., also agreed that "goodwill" can include trademarks. JA 461. This understanding comports with Third Circuit precedent. *See e.g. Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986) (a trademark "cannot be transferred separately from the goodwill of the business"). Defendants present conflicting evidence, including communications between CollaGenex's counsel and Sköld in which the parties purportedly agree that CollaGenex owned the Restoraderm trademark.

9

JA 50, 350.  Defendants also argue that the language, "[a]ll goodwill, if any, relating to the foregoing," limited "goodwill" to patent rights, know-how, and rights to sue.  Mtn. at 25-26.

In light of these conflicting and disputed facts, both interpretations of this provision are reasonable.  "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."  *Abington Friends Sch.*, 480 F.3d at 256 (citing *Celotex Corp*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 248-52).  Accordingly, summary judgment must be denied.

### C.  Statute of Limitations

Finally, defendants argue that Sköld's claims should be dismissed as barred by the statute of limitations.  Mtn. at 19.  Sköld counters that genuine factual disputes preclude summary judgment.  Opp'n at 22.  In Pennsylvania, the statute of limitations for breach of contract actions is four years.  *See* 42 Pa. C.S.A. § 5525(a).  Thus, the crux of this case is when the alleged breach occurred, a fact without which the Court cannot calculate the expiration of the statute of limitations.  Defendants choose the day that a representative of defendants presented Sköld with a written termination of the 2004 Agreement, November 27, 2009, as the date of the alleged breach.  Mtn. at 24; JA 135-38.  Sköld argues that defendants breached the 2004 Agreement when they used the Restoraderm trademark on a product on or about September 14, 2010, an act that signaled their intent not to return the mark.  Opp'n at 23.  Sköld further contends that the statute of limitations should be tolled because defendants deliberately misled him as to the alleged breach.  Opp'n at 28.

Pennsylvania law employs the "discovery rule," a doctrine that serves to toll the statute of limitations in any case where a party "neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises."  *Fine v. Checcio*, 870 A.2d 850,

859 (Pa. 2005). The statute of limitations may also be tolled where, "through fraud or concealment, [a defendant] causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Id.* at 860. Sköld invokes both the discovery and fraud and concealment doctrines against defendants' statute of limitations argument.

Reading the facts in the light most favorable to Sköld and assuming that the 2004 Agreement includes the Restoraderm trademark, a voluntary termination required CollaGenex to return the trademark as part of the purchased assets. The Agreement did not specify a time period in which the assets must be returned, nor did it define what constitutes a material breach of the Agreement as it relates to the trademark. JA 87-109. There is no identifiable date on which defendants were required to – but failed – to return the Restoraderm trademark. *Id*. Defendants essentially ask this Court to choose one date on which Sköld knew or should have known that defendants no longer intended to return the trademark, despite the myriad factual disputes in this case.

In addition to conversations attested to in Sköld's sworn statements, Sköld has produced evidence of electronic communications with defendants' representatives Chris De Bruyne, Director of Licensing of Galderma International, Quintin Cassady, Vice President and General Counsel of Galderma Laboratories, L.P., and Art Clapp, Vice President of Business Development of Galderma Laboratories, L.P., that he asserts misled him into believing defendants did not intend to breach the Agreement. JA 128-39, 144-46, 151-53; SA 642-47, 697. Defendants present conflicting electronic communications which they claim prove that Sköld knew or should have known of the alleged breach before September 13, 2010. Mtn. at 20- 23. A plaintiff's awareness of the breach is a factual issue "best determined by the collective judgment, wisdom and experience of jurors," not judges. *Coleman v. Wyeth Pharmaceuticals*, 6 A.3d 502,

11

510 (Pa. Super. Ct. 2010) (quoting *Crouse v. Cyclops Industries*, 560 Pa. 394 (2000)); *see also Taylor v. Tukanowicz,* 435 A.2d 181 (Pa. Super. 1981) ("whether a plaintiff has exercised due diligence in discovering the incidence of his injury is usually a jury question") (citing *Irrera v. Southeastern Pennsylvania Transportation Authority*, 231 Pa. Super. 508 (1974)).

Whether the statute of limitations on a claim has expired "is usually a question of law for the judge, but where, as here, the issue involves a factual determination . . . the determination is for the jury." *Taylor*, 290 Pa. Super. at 586 (citing *Smith v. Bell Telephone Company of Pennsylvania*, 397 Pa. 134, 142 (1959)).  Viewed in the light most favorable to Sköld and drawing all reasonable inferences in his favor, the Court finds there are genuine disputes as to material facts that preclude summary judgment on this ground.

Dated:  **February 24, 2016**

                                           **BY THE COURT:**

                                           **/S/WENDY BEETLESTONE, J.**

                                           _____
                                           **WENDY BEETLESTONE, J.**